**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 07-cv-00135-REB

MICHAEL O. BACKUS,

      Applicant,

v.

STEVEN HARTLEY, Warden of Limon Correctional Facility, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

---

**Blackburn, J.**

      This matter is before me on Applicant's **Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254** [#2], filed January 19, 2007.  The Respondents filed an answer, and Applicant filed a traverse.  Because Applicant is proceeding *pro se*, I construed his filings generously and with the leniency due pro se litigants, see ***Erickson v. Pardus***, 551 U.S. 89 ___, 127 S. Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007); ***Andrews v. Heaton***, 483 F.3d 1070, 1076 (10th Cir. 2007); ***Hall v. Belmon***, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing ***Haines v. Kerner***, 404 U.S. 519, 520-21 (1972)).  I have reviewed both the record in this case and the applicable law.  I conclude ultimately that Applicant is not entitled to the relief he seeks.

**I.  Jurisdiction**

      I have jurisdiction over this matter under 28 U.S.C. § 2254(a).

1

## II. Background

The facts[1] leading to Applicant's conviction are as follows:  Applicant and Jill Coit lived together in Greeley, Colorado, but were not married.  Applicant worked at the Greeley Office of U.S. West.  He told several co-workers that he and Ms. Coit were going on a camping trip to the Kelly Flats Campground in Poudre Canyon from October 20-21, 2003, and that he would return to Greeley the night of October 21, 2003. Applicant returned to work at U.S. West on October 22, 2003.  Meanwhile, Jill Coit and her ex-husband, Gerald Boggs, had become involved in extremely contentious civil litigation involving a bed and breakfast in Steamboat Springs owned by Mr. Boggs.[2] Their case was scheduled to go to trial in Routt County District Court on October 27, 1993.  However, Gerald Boggs was killed in his home in Steamboat Springs, Colorado, between 1:00 p.m., on Thursday, October 21, 1993, and 3:30 p.m., on Friday, October 22, 1993.  He died of two gunshot wounds to the chest, and he also suffered blunt trauma to the head and bruising to the side of his face possibly caused by a stun gun.

The State's theory at trial was that Ms. Coit felt her civil case with Mr. Boggs was becoming a liability, and she was afraid of the evidence related to her past that would be brought out in trial.  Accordingly, the State believed that, after attempting to solicit several people to kill Mr. Boggs, Ms. Coit and Applicant decided they must kill him

---

[1]This general introductory background is taken from the statement of facts in Applicant's opening brief on direct appeal.  Answer at Exhibit C, p. 9-14.

[2]In their opening brief on direct appeal, Respondents stated that the litigation began when Ms. Coit filed suit to declare the deed of trust held by Mr. Boggs on the bed and breakfast null and void.  Mr. Boggs then counterclaimed alleging fraudulent behavior, intentional infliction of emotional distress, defamation, and outrageous conduct based on Ms. Coit's allegation that she had given birth to his daughter, but would not let him see or meet the child.  The counterclaim alleged that the child did not exist.  Answer at Exhibit D, p. 11 n.3.

themselves.   At their joint trial, the evidence presented by the State tended to show that Mr. Boggs was killed at some time early in the afternoon of October 21, 1993. This was based upon the following testimony. He was seen alive at 1:00 p.m. A girl scout knocked on his door at approximately 4:00 p.m., but received no response even though she saw one of his cars in the garage.   Seth Coit testified at trial that his mother, Jill Coit, called him on October 21, 2003. sometime between 3:30 and 4:00 p.m., and said "hey baby, it's done and it's messy."   Seth Coit believed his mother was referring to Mr. Boggs because she had previously told him that she wanted Mr. Boggs killed and discussed certain details related to the murder.

On November 24, 1993, in Routt County, Colorado, Applicant was charged, separately from Jill Coit, with conspiracy and the first degree murder of Gerald Boggs. On December 30, 1993, the Routt County District Court (the "trial court") granted the State's motion to join Mr. Backus and Ms. Coit in a single Amended Complaint. Although Applicant's trial counsel filed several motions to sever Applicant's trial from Ms. Coit's, these efforts were unsuccessful.   The joint jury trial, which was transferred to Grand County due to pretrial publicity, began on February 6, 1995.   On March 17, 1995, the jury returned guilty verdicts for both defendants, and on May 23, 1995, Applicant was sentenced to life in prison, and a consecutive term of 48 years for conspiracy.

### III.  Claims

Applicant asserts four[3] claims:

---

[3]While Applicant originally asserted five claims for relief, **see** Application at 5-8, in his Traverse, Applicant concedes that he cannot maintain his third claim for relief, a claim for violation of the Posse Comitatus Act, 18 U.S.C. § 1385.  **See** Traverse at 12.  Therefore, I consider this claim withdrawn and will not address its merits.

1.  The trial court violated Applicant's right to a fair trial when it denied his motion to sever his trial from that of Ms. Coit;

2.  The trial court violated Applicant's right to a speedy trial when it granted Ms. Coit's motion for continuance of the trial;

3.  Applicant's right to effective assistance of counsel was violated due to: (a) governmental interference; (b) trial counsel's failure to investigate; (c) trial's counsel's failure to argue properly the severance motion; and (d) trial counsel's poor advice regarding Applicant's right to testify at trial; and

4.  Applicant's right to effective assistance of counsel was violated when his appellate counsel failed to present his claims on appeal as federal constitutional claims.

## IV.  Timeliness of Petition

I agree with Respondents that the application was filed within the applicable one year statute of limitations.  28 U.S.C. § 2244(d)(1).

## V.  Legal Standard

In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court.  *See Estelle v. Mcguire*, **502 U.S. 62, 67-68** (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "When a federal district court reviews a state prisoner's habeas petition pursuant to 28 U.S.C. § 2254 . . . . [it] does not review a judgment, but the lawfulness of the petitioner's custody *simpliciter*."  *Coleman v. Thompson*, 501 U.S. 722, 730 (1991) (internal quotations and citations omitted).  The exhaustion of state remedies requirement in federal habeas cases dictates that a state prisoner must "give the state courts one full

4

opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Because Applicant filed his Petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), that statute governs my review. *Cannon v. Mullin,* 383 F.3d 1152, 1158 (10th Cir. 2004) (citing *Rogers v. Gibson,* 173 F.3d 1278, 1282 n. 1 (10th Cir. 1999)). Under the AEDPA, a district court may only consider a habeas petition when the applicant argues that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question pursuant to § 2254(d)(1) is whether Applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction

became final.  **See Williams v. Taylor**, 529 U.S. 362, 390 (2000).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  **Id.** at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*.  Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

**House v. Hatch**, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of my inquiry pursuant to § 2254(d)(1).  **See id.** at 1018.  If a clearly established rule of federal law is implicated, I must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.  **See Williams**, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent."  **Maynard [v. Boone]**, 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting **Williams**, 529 U.S. at 405).  "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'"  **Williams**, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts.  **Id.** at 407-08.  Additionally, we have recognized that an unreasonable application may occur if the state court either

6

> unreasonably extends, or unreasonably refuses to extend, a
> legal principle from Supreme Court precedent to a new
> context where it should apply.

*House*, 527 F.3d at 1018.

My inquiry pursuant to the "unreasonable application" clause is an objective one.

*See Williams*, 529 U.S. at 409-10.  "[A] federal habeas court may not issue the writ

simply because that court concludes in its independent judgment that the relevant

state-court decision applied clearly established federal law erroneously or incorrectly.

Rather that application must also be unreasonable."  *Id.* at 411.  "[A] decision is

'objectively unreasonable' when most reasonable jurists exercising their independent

judgment would conclude the state court misapplied Supreme Court law."  *Maynard*,

468 F.3d at 671.  "[O]nly the most serious misapplications of Supreme Court precedent

will be a basis for relief under § 2254."  *Id.*

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2).  *See*

*Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002).  Section 2254(d)(2)

allows a court to grant a writ of habeas corpus only if the state court decision was based

on an unreasonable determination of the facts in light of the evidence presented.

Pursuant to § 2254(e)(1), I must presume that the state court's factual determinations

are correct, and Applicant bears the burden of rebutting the presumption by clear and

convincing evidence.  "The standard is demanding but not insatiable . . . [because]

'[d]eference does not by definition preclude relief.'"  *Miller-El v. Dretke*, 545 U.S. 231,

240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, I "owe deference to the state court's *result*, even if its reasoning is not

7

expressly stated." ***Aycox v. Lytle***, 196 F.3d 1174, 1177 (10th Cir. 1999).  Therefore, I

"must uphold the state court's summary decision unless [an] independent review of the

record and pertinent federal law persuades [the Court] that its result contravenes or

unreasonably applies clearly established federal law, or is based on an unreasonable

determination of the facts in light of the evidence presented." ***Id.*** at 1178.  "[T]his

'independent review' should be distinguished from a full *de novo* review of the

petitioner's claims." ***Id.***

## VI.  Claim One

Applicant asserts that his right to a fair trial pursuant to the Sixth and Fourteenth

Amendments was violated when the trial court denied his request to sever his trial from

Ms. Coit's trial. The crux of Applicant's argument is that evidence of the civil suit

between Ms. Coit and her ex-husband, Gerald Boggs, would not have been admissible

against Applicant if he had been tried separately from Ms. Coit, and that this evidence

was unfairly prejudicial to Applicant.  Application at 6.

In addressing Applicant's severance claim, the Colorado Court of Appeals

("CCA") found that:

> In exercising its discretion, the trial court is guided by whether: (1)
> the number of defendants or the complexity of the evidence is such that
> the jury will confuse the evidence and the law applicable to each
> defendant; (2) despite cautionary instructions, the evidence admissible
> against one defendant will be improperly considered against the other
> defendant; and (3) the defenses asserted by each defendant are
> antagonistic. ***People v. Lesney***, 855 P.2d 1364 (Colo. 1993).

> Here, in order to establish a motive for the murder and conspiracy,
> the prosecution sought to introduce evidence of the acrimonious civil suit
> between the victim and Coit.  Such evidence supported the prosecution's
> theory that the murder was committed by Coit and defendant to prevent

exposure of matters which would have been presented in the civil suit scheduled to begin one week after the murder was committed.

In his pre-trial motion for a separate trial, defendant claimed that evidence of the civil suit was inadmissible against him and that it was of such a pervasive and prejudicial nature that he was entitled to severance as of right.  However, after a hearing, the trial court found to the contrary that: (1) the objectionable evidence also was admissible against defendant; (2) the defenses being raised by defendant and Coit were not antagonistic; (3) the jury was unlikely to confuse the evidence or the law as to each defendant; and (4) any evidence inadmissible as to defendant could be presented with appropriate limiting instructions and would not be improperly considered by the jury.

*People v. Backus*, 952 P.2d 846, 850-51 (Colo. App. 1998) (Answer at Exhibit F).

The Supreme Court has recognized that "[j]oint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability - advantages which sometimes operate to the defendant's benefit." *Richardson v. Marsh*, 481 U.S. 200, 210 (1987); *see also Zafiro v. United States*, 506 U.S. 534, 539 (1993) (finding that severance is not mandatory even when co-defendants have conflicting defenses).  Therefore, "[w]hether the trial court erred in denying severance is generally a question of state law that is not cognizable on federal habeas appeal, . . . for a criminal defendant has no constitutional right to severance unless there is a strong showing of prejudice caused by the joint trial." *Cummings v. Evans*, 161 F.3d 610, 619 (10th Cir. 1998).  "Neither a mere allegation that defendant would have a better chance of acquittal in a separate trial, nor a complaint of the 'spillover effect' from the evidence that was overwhelming or more damaging against the co-defendant than against the moving party is sufficient to warrant a severance. *United States v. Hack*, 782 F.2d 862, 870 (10th Cir. 1986).  A defendant bears a heavy

burden of showing actual prejudice as a result of a denial of a motion to sever.  **Id.**
"Such actual prejudice is shown if the defenses are truly mutually exclusive, such that
the jury could not believe the core of one defense without discounting entirely the core
of the other."  **Fox v. Ward**, 200 F.3d 1286, 1293 (10th Cir. 2000) (citation omitted).

With this standard in mind, I find that the CCA's determination that Applicant was
not prejudiced by the joint trial is correct.  After carefully reviewing the record, I find that
Applicant has failed to demonstrate that he suffered prejudice as a result of being tried
jointly with his co-defendant, Ms. Coit.  Applicant and Ms. Coit asserted identical alibi
defenses:  that they were camping at the Kelly Flats Campground in Poudre Canyon
from October 20-21, 1993.  Answer at Exhibit C, p. 9.  Therefore, no antagonism
between Applicant and his co-defendant can be discerned from the record, and there is
no indication of actual prejudice to Applicant due to the joint trial.  **See Fox**, 200 F.3d at
1293.  Because Applicant has not established that the decision of the CCA with regard
to this claim was contrary to or an unreasonable application of clearly established
federal law, I find and conclude that Applicant is not entitled to habeas corpus relief on
his first claim.

## VII.  Claim Two

In his second claim, Applicant contends that the trial court violated his Sixth and
Fourteenth Amendment right to a speedy trial when it granted Ms. Coit's motion to
continue.  Application at 5.  As a threshold matter, Respondents argue that Applicant
failed to exhaust adequately this claim, because he raised it only as an issue of state
law, and not as a federal constitutional claim on direct appeal.  Answer at 15.  Applicant

concedes that his speedy trial claim was not fairly presented as a federal constitutional issue on direct appeal, but argues that his failure to exhaust should be forgiven because his appellate counsel was ineffective due to her failure to adequately raise this argument.  Traverse at 3.

Pursuant to 28 U.S.C. § 2254(b)(1), an application for a writ of habeas corpus may not be granted unless it appears that the applicant has exhausted state remedies or that no adequate state remedies are available or effective to protect the applicant's rights.  *See O'Sullivan*, 526 U.S. at 838; *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994).  A claim has been exhausted when it has been "fairly presented" to the state court.  *Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)).  Fair presentation requires that the federal issue be presented properly "to the highest state court, either by direct review of the conviction or in a postconviction attack."  *Dever*, 36 F.3d at 1534.  Although fair presentation does not require an applicant to cite "book and verse on the federal constitution," *Picard,* 404 U.S. at 278 (internal quotation marks omitted), "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts."  *Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam).  Instead, a claim must be presented as a federal constitutional claim in the state court proceedings in order to be exhausted.  *See Duncan v. Henry,* 513 U.S. 364, 365-66 (1995) (per curiam).  Here, the record demonstrates that Applicant failed to present fairly his speedy trial claim as a federal constitutional claim to the state courts and, therefore, this claim is unexhausted.  *See* Answer at Exhibits C & E.  However, because the claim is also without merit, I may

deny it without regard to the exhaustion issue. *See Moore v. Schoeman*, 288 F.3d 1231, 1232 (10th Cir. 2002) (noting that a court may deny an application for writ of habeas corpus on the merits, "notwithstanding the [applicant's] failure to exhaust his state court remedies.").

Here, the CCA addressed Applicant's speedy trial claim under the standards set forth in §18-1-405(6)(c), C.R.S., and Crim.P. 48(b)(6)(III). *See Backus*, 952 P.2d at 848-49. Notwithstanding the state court's reliance on Colorado law, the Supreme Court in *Early v. Packer*, 537 U.S. 3, 8 (2002), made clear that pursuant to the AEDPA there is no requirement that the state court cite or even be aware of Supreme Court cases "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id.* Accordingly, where, as here, there is no indication suggesting that the state court did not reach the merits of the claim, the § 2254(d)(1) deferential standard applies, and my review is limited to whether Applicant has established that the state court decision was contrary to, or involved an unreasonable application of, clearly established Federal law. *See, e.g., Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

"A Sixth Amendment speedy trial claim is assessed by balancing: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether the delay prejudiced the defendant." *Jackson v. Ray*, 390 F.3d 1254, 1260 (10th Cir. 2004) (citing *Barker v. Wingo*, 407 U.S. 514, 530-32 (1972)). Although no single factor in and of itself is sufficient to establish a Sixth Amendment speedy trial violation, the length of the delay is considered to be the "triggering mechanism" that sets into motion a court's analysis of the remaining *Barker*

factors.  *Barker*, 407 U.S. at 533.  Because there is no "bright-line" rule for determining when a pretrial delay triggers a full *Barker* analysis, "the length of the delay that will provoke such an inquiry is necessarily dependent upon the particular circumstances of the case."  *Id.* at 530-31.  Adopting a "sliding-scale" approach, the Supreme Court has noted that, depending on the nature of the charges, delay of a trial that approaches one year is generally presumptively prejudicial.  *See Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992); *see also United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006) (holding that "[d]elays approaching one year generally satisfy the requirement of presumptive prejudice.").  Here, Applicant was charged on November 24, 1993, and the joint trial began on February 6, 1995.  Accordingly, the delay suffered by Applicant was approximately fourteen months.  This fourteen-month delay is presumptively prejudicial and triggers *Barker* analysis.  *See Doggett*, 505 U.S. at 652; *Batie*, 433 F.3d at 1290.

The first two *Barker* factors require that I examine the length of the delay and the reason for delay.  *See Jackson*, 390 F.3d at 1260.  "[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge."  *Barker*, 407 U.S. at 531.  I must consider "the extent to which [such] delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Jackson*, 390 F.3d at 1261.  Further, an "inculpable reason" for the delay must be demonstrated.  *Id.*

In this case, Applicant was not charged with an "ordinary street crime;" instead, he was charged with conspiracy and first degree murder.  Moreover, in granting Ms. Coit's motion to continue this case, the trial court noted that:

> this case is very complex in the sense of at least the number of potential witnesses, the nature of the evidence that is going to be presented, and the various relationships that are involved.  It is going to be a lengthy trial . . . there is something over 180 witnesses that have been identified, a good deal of physical evidence that has been proposed to be offered, and there are significant legal issues to be resolved.

*Backus*, 952 P.2d at 849.  Considering the seriousness of these crimes, and the extensive investigation involved in the prosecution and/or defense of such crimes, I find that the fourteen-month delay present here does not exceed the "bare minimum needed to trigger judicial examination of the claim."  *Jackson*, 390 F.3d 1261 (citing *Doggett*, 505 U.S. at 652).  Using the sliding-scale approach set forth in *Doggett*, I find that a delay of fourteen months is considerably less and more tolerable than the six-year delay in *Doggett*, and further, that the delay here did not presumptively pose an inordinate threat to the fairness of the trial.  *See Doggett*, 505 U.S. at 657 (noting that the State's negligence in failing to conclude its criminal prosecution "compounds over time as the presumption of evidentiary prejudice grows.").  Moreover, it is apparent that the trial court had a reasonable explanation for granting Ms. Coit's motion to continue the trial.  *Backus*, 952 P.2d at 849.   I find that the first two *Barker* factors weigh against Applicant.

Further, although Applicant asserted his speedy trial claim before the state  court, the fourth *Barker* factor also weighs against him.  That is, "[a] showing of prejudice is required to establish a violation of the Sixth Amendment Speedy Trial Clause, and that necessary ingredient is entirely missing here."  *Reed v. Farley*, 512 U.S. 339, 353 (1994) (citing *Barker*, 407 U.S. at 530).  Applicant does not point to any prejudice that he suffered as a result of the fourteen month delay.  Applicant does not assert that his

14

defense was impaired or that any evidence or testimony was lost or destroyed due to the delay.  *See Barker*, 407 U.S. at 532 (noting that the most serious type of prejudice occurs when a defendant's ability to adequately prepare for his case is affected by delay).  Instead, he merely states that "Ms. Coit's rights cannot supercede [Applicant's] rights and in allowing [the continuance], the trial court violated his Sixth and Fourteenth Amendment protections to a speedy trial . . . ."  Application at 5.  I find that Applicant has failed to make any showing of prejudice – let alone irreparable prejudice – that occurred due to the fourteen month delay; thus, this factor also weighs against him.

After considering and applying all of the *Barker* factors to this case, I conclude that Applicant has not established that the state court decision was contrary to, or involved an unreasonable application of, clearly established Federal law.  Accordingly, Applicant is not entitled to habeas relief on his second claim.

## VII.  Claim Three

In his third claim, Applicant alleges that he received ineffective assistance of counsel due to: (1) governmental interference; (2) trial counsel's failure to investigate his case properly; (3) trial counsel's failure to argue the motion to sever properly; and (4) trial counsel's failure to advise Applicant properly regarding his right to testify at trial.  Application at 7.  Applicant also raised these claims before the trial court in his Crim.P. 35(c) motion, and the trial court held a four-day hearing on the motion, beginning on September 8, 2003.  *See* Answer at Exhibit J, p. 4 (Order Denying Defendant's Rule 35(c) Motion).

When Applicant was convicted, it was clearly established that a defendant has a

right to effective assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668 (1984).  To establish that his trial counsel was ineffective, Applicant must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense.  *See id.* at 687-88.  In addition, "[j]udicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689.  There is a "strong presumption" that counsel's performance falls within the range of "reasonable professional assistance."  *Id.*  It is Applicant's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances.  *See id.*  Under the prejudice prong, Applicant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  If Applicant fails to satisfy his burden with regard to either prong of the *Strickland* test, his ineffective assistance of counsel claim must be dismissed.  *See id.* at 697.  Finally, ineffective assistance of counsel claims are mixed questions of law and fact.  *See id.* at 698.

A.  Governmental Interference

Here, Applicant alleges that the government interfered improperly in his trial because: (1) the district attorney objected during trial counsel's opening statement, and (2) the trial court warned Applicant's counsel that if he caused a mistrial, he would be forced to bear the cost.  Application at 7.  In essence, Applicant argues that the prosecution and trial court improperly intimidated Applicant's trial counsel, forcing him to be ineffective.

In addressing this claim, the CCA found as follows:

Defendant contends Davies created a "hostile and acrimonious relationship" with the trial judge, that doing so fell below the reasonable standard of representation, and that it resulted in governmental interference with his right to effective assistance of counsel.  Based on the alleged government interference, defendant argues that he does not have to show prejudice or alternatively that he was prejudiced.  We are not persuaded.

In the middle of Davies's opening statement, the prosecution objected that the entire statement was improper argument.  The trial court sustained the objection, ended Davies's opening, and instructed him to sit down.  The following day, outside the presence of the jury, the court admonished Davies, stating that his opening statement was improper argument and violated a previous court order excluding evidence by improperly introducing defendant's character.  The court then stated: "And, counsel, you risk this Court saying, finally you have so tainted this jury a new trial will be granted and you will pay for it. . . . [Y]ou violate my orders and I have no problem granting a mistrial, and whoever does it will pay for the cost to the State of Colorado."

Davies then moved for a mistrial based on the "[h]orrible chilling effect" imposed by the court's threat of his paying for a new trial on his ability to represent defendant.  The court denied the motion, but permitted Davies to continue his opening statement if he so desired.  Davies declined to continue his opening.

We conclude defendant was not denied his right to counsel. Davies completed a large part of his opening before the court instructed him to stop, and the court also provided Davies with the option of continuing the statement on the following day.  In addition, the court stated it believed Davies was almost finished with his opening statement when it ordered him to stop.  In this context, the trial court was permitted to sustain the objection and stop Davies' improper opening statement. Moreover, at the postconviction hearing, Davies testified that he had not been intimidated, and the record shows he made several motions after his opening statement was stopped.

We thus conclude the trial court did not interfere with defendant's right to counsel, and he is therefore required to prove that Davies' acrimonious behavior prejudiced him.  We further conclude that defendant has not met that requirement.

Although Davies made an improper, argumentative opening statement, defendant does not indicate how this impropriety influenced the jury's verdict.  Nor does he contend that there is reasonable probability the

17

outcome of the trial would have been different but for the errors in the opening statement or the court's ruling regarding them.  In addition, the court admonished Davies regarding the statement and paying for a new trial outside the presence of the jury.

We conclude that defendant has not shown by a preponderance of the evidence that Davies' performance undermined confidence in the verdict, and thus defendant has not satisfied the prejudice prong of the Strickland v. Washington, supra, test.

Answer at Exhibit M, p. 7-10.

"Government violates the right to effective assistance when it interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense." *Strickland*, 466 U.S. at 686; *Perry v. Leeke*, 488 U.S. 272, 279-80 (1989).  Because assistance of counsel is considered to be fundamental during the adversarial process, a trial is unfair if a defendant is found to have been denied counsel at any critical stage. *See United States v. Cronic*, 466 U.S. 648 (1984).  Therefore, when governmental interference actually or constructively denies assistance of counsel during a critical stage of the proceeding, a defendant does not need to make a specific showing of prejudice. *See Perry*, 488 U.S. at 272.

Here, the CCA identified the appropriate Supreme Court standard and found that the district attorney and the trial court did not improperly interfere with the ability of Applicant's counsel to "make independent decisions about how to conduct the defense," because there was no showing that the actions of the district attorney and the trial court had any effect on Applicant's counsel's ability to proceed with trial. *Strickland*, 466 U.S. at 686.  The CCA also noted that Applicant did not show a reasonable probability that the outcome of the trial would have been different but for his  counsel's errors in the

opening statement or the court's ruling regarding them.  ***See id.*** at 694.  Accordingly,

having reviewed the record, I find that the state court's determination that Applicant

failed to demonstrate that his counsel was ineffective due to governmental interference

did not result in a decision that was contrary to, or involved an unreasonable application

of, ***Strickland***.

> B.  Failure to Investigate

Applicant alleges that his trial counsel was ineffective for failing to investigate Ms.

Coit adequately.  Specifically, Applicant alleges trial counsel failed to discover

prejudicial evidence introduced at trial against Ms. Coit, such as "that Ms. Coit had a

history of killing her husbands and had become [sic] to be known as the 'Black Widow.'"

Application at 7.

The CCA made the following findings with respect to this claim:

> At the Crim. P. 35(c) hearing, defendant's expert witness testified,
> "The failure to investigate prevented Mr. Davies from making appropriate
> severance arguments, and the failure to investigate therefore resulted, in
> my judgment, in the severance being denied.  So, the end result is that Mr.
> Davies is unprepared for a variety of witnesses."  The expert further
> testified that the lack of investigation caused Davies to present
> defendant's alibi defense, which in his view was the wrong defense.  In
> addition, the expert stated that if Davies had properly investigated Coit's
> history, he would have realized that there were antagonistic defenses and
> argued the motions for severance accordingly.  According to the expert,
> the trial court would have granted a severance if Davies had properly
> asserted that defendant had an antagonistic defense.
>
> The trial court found Davies received substantial discovery from the
> prosecution that detailed Coit's background.  The court also found that
> Davies relied on Coit's negative background in his motions for severance
> and in his attempts to persuade defendant to abandon his alibi defense.
> Given Davies's reliance on Coit's background, the court concluded that
> Davies had fully informed defendant of Coit's bad character and had given
> defendant an opportunity to pursue an alternative defense, but that
> defendant rejected Davies's advice.  Noting that defendant testified that he

would still rely on his alibi defense if given a new trial, the court concluded that Davies was not ineffective and that defendant's refusal to separate himself from Coit at trial complicated Davies's effort to defend him.

Answer at Exhibit M, p. 12-13.

"In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91. Further, a tactical decision by counsel with which the defendant later disagrees is not a basis for a claim of ineffective assistance of counsel. *See, e.g., Guam v. Santos*, 741 F.2d 1167, 1169 (9th Cir. 1984).

The record supports the state courts' findings that both Applicant and his trial counsel had extensive knowledge of Ms. Coit's negative background, and that, based upon this discovery, trial counsel made efforts to convince Applicant to distance himself from Ms. Coit. Indeed, it appears from the record that Applicant had knowledge of the prior bad actions of Ms. Coit, but could not bear to distance himself from her at trial such that his counsel could present an effective antagonistic defense. Applicant has made no plausible showing that his trial counsel failed to investigate this case, and I find that the state courts' conclusion that Applicant's trial counsel did not provide ineffective assistance based upon his alleged failure to investigate Ms. Coit did not result in a decision that was contrary to, or involved an unreasonable application of, *Strickland*.

20

C.  Failure to Argue Motion to Sever Effectively

Third, Applicant argues that his trial counsel failed to argue properly the motion to

sever Applicant's trial from that of Ms. Coit.  Application at 7.  He contends that trial

counsel failed to present Applicant's actual alibi that, on the day of the murder,

Applicant went hiking in Poudre Canyon alone, and Ms. Coit went by herself to

Steamboat Springs to kill Mr. Boggs.  ***Id.***

In addressing this claim, the CCA found as follows:

> The expert testified that severance in this case was not a tactical issue, but rather was a fundamental strategic decision which could only be determined after thorough investigation.  In the expert's opinion, Davies's lack of adequate investigation into Coit's background resulted in his failure to properly to argue for severance based on antagonistic defenses.
>
> After reviewing the record, the trial court found that Davies's testimony about his attempts to persuade defendant to abandon the alibi defense and adopt an antagonistic defense was credible.  In addition, the court found the expert's conclusion "that Davies failed to utilize Coit's negative personal history to develop a defense for [defendant] antagonistic to Coit and to use said information to support the defense motions for severance" was unfounded.  Given defendant's continued reliance on the alibi defense and Davies's reasonable efforts to obtain a severance, the trial court concluded the fact that Davies was unsuccessful in his severance motions did not constitute ineffective assistance of counsel.  We perceive no error in this conclusion.

Answer at Exhibit M, p. 14-15.

Here, the CCA concluded that the credibility determination made by the lower

court, finding trial counsel credible on this issue and not Applicant, was appropriate.  A

reviewing court cannot impose its own judgment on an issue of credibility to overrule the

decision of a court that had the opportunity to view the testimony first-hand.  ***Bryan v.***

***Gibson***, 276 F.3d 1163, 1171 (10th Cir. 2001), ***opinion vacated in part on other***

***grounds on reh'g en banc by Bryan v. Mullin***, 335 F.3d 1207 (10th Cir. 2003)

21

(resolving factual issues depends on the factfinder's evaluation of the credibility and demeanor of witnesses).  The CCA properly reviewed the record to ensure there was support for the trial court's findings.  Further, the AEDPA deference to state court findings pursuant to § 2254 includes deference to findings on credibility.  **See Church v. Sullivan**, 942 F.2d 1501, 1516 (10th Cir. 1991).

With this presumption in mind, I again note that the trial court found that Mr. Davies sought to convince Applicant to employ a defense antagonistic to Ms. Coit, but that Applicant refused to do so.  Trial counsel's judgment in this determination was found to be appropriate by the CCA, and I find that the result is not contrary to Supreme Court precedent, nor is it an unreasonable determination of the facts in light of the evidence presented.  In addition, the credibility determinations of the lower court in finding that Applicant would not abandon his co-defendant and testify against her in order to create an antagonistic defense, is not an unreasonable determination of the facts.

Finally, even assuming *arguendo* that his trial counsel's performance fell below an objective standard of reasonableness, the lack of merit in Applicant's substantive Sixth Amendment claim forecloses his argument that his trial counsel was ineffective to failing to obtain a severance.  Specifically, because as set forth above, the trial court's failure to sever the trials did not deprive Applicant of a fair trial, he necessarily suffered no prejudice from his trial counsel's failure to obtain a severance.  **See Spears v. Mullin**, 343 F.3d 1215, 1251 (10th Cir. 2003); **Castro v. Ward**, 138 F.3d 810, 830 (10th Cir. 1998).

D.  Failure to Advise Properly

22

Here, Applicant argues that his counsel "assured [him] that the trial court's failure to grant the severance motion was reversible error and that he should not testify because he would end up getting a new and separate trial anyway, so why disclose his defense." Application at 8. Based upon trial counsel's allegedly erroneous advice, Applicant asserts that he chose not to testify at trial, and was prejudiced as a result. *Id.*

With regard to this claim, the CCA found the following:

> Davies's advice to defendant not to testify at trial also relates to the investigation into Coit's background and the severance motions. Defendant contends Davies advised him not to testify based on Davies's allegedly erroneous belief that the case would be reversed because the court denied his motion to sever. He argues that Davies advised him that he would get a new trial, and, if he testified for the first time at the new trial, he would have the advantage of not having previously disclosed the substance of his testimony to prosecution. According to defendant, this advice was erroneous because, if he had won the appeal on the severance issue, the case would have been dismissed for a denial of speedy trial.

> At trial, after receiving a <u>Curtis</u> advisement, defendant responded, "My decision is that I can't testify. If this was a separate trial, I could, I would testify in my own behalf." At the postconviction hearing, Davies testified that he advised defendant not to testify because he believed that the trial court erred when it denied the motion to sever and that this error would result in a new trial. However, Davies also stated that defendant voluntarily decided not to testify and was given a full <u>Curtis</u> advisement. At the postconviction hearing, defendant testified that he understood the <u>Curtis</u> advisement and chose not to testify.

> The trial court found that defendant made a voluntary, informed decision not to testify. Although defendant and Davies disagreed about whether to present the alibi defense, the court concluded that this disagreement did not improperly deprive defendant of his right to testify at trial, and the disagreement did not constitute ineffective assistance.

Answer at Exhibit M, p. 15-16.

A criminal defendant has a fundamental constitutional right to testify in his own behalf at trial. *See Rock v. Arkansas*, 483 U.S. 44, 49-52 (1987). However, the trial

court has no obligation to inquire into a defendant's decision not to testify, absent a

showing that defendant did not make the decision not to testify, or that defendant and

his attorney disagreed on whether defendant should take the stand.  ***See United States***

***v. Janoe***, 720 F.2d 1156, 1161 (10th Cir. 1983).  Here, the record demonstrates that

the state trial court gave Applicant a full ***Curtis***[4] advisement, as required by Colorado

law.  ***See*** Trial Court Record, Vol. XLI, p. 19-34.  Likewise, in reviewing this claim, both

the trial court and the CCA found that Applicant's decision not to testify was due to his

"own free and voluntary choice."  Answer at Exhibit J, p. 14; Exhibit M**,** p. 15-16.  I agree

that even though Applicant and his attorney may have disagreed over which alibi

defense to present, that it was ultimately Applicant's free and voluntary decision not to

testify at trial.  Accordingly, his disagreement with counsel did not deprive him of his

fundamental constitutional right to testify at trial.  Furthermore, pursuant to § 2254(e)(1),

the factual findings of the state courts that a ***Curtis*** advisement was given, and that

there was a voluntary, knowing, and intelligent waiver of the right to testify, are

presumed correct.  28 U.S.C. § 2254(e).  Applicant bears the burden of rebutting this

presumption by clear and convincing evidence.  ***See*** 28 U.S.C. § 2254(e)(1).  I find that

Applicant fails to present any clear and convincing evidence to overcome the

presumptively correct state court factual determination that he was not provided

improper advice by his attorney with respect to his decision to testify.  Therefore, I also

find that Applicant voluntarily, knowingly, and intelligently waived his right to testify.  As

---

[4]***People v. Curtis***, 681 P.2d 504, 514-15 (Colo. 1984) (holding that a defendant's waiver
of his constitutional right to testify on his own behalf at a criminal trial must be voluntary,
knowing and intelligent and that the existence of an effective waiver should be ascertained by
the trial court on the record).

a result, Applicant's claim that counsel provided ineffective assistance by improperly advising him to waive his right to testify lacks merit and must be dismissed.

## VIII.  Claim Four

In his fourth claim, Applicant alleges that his counsel on direct appeal, Terry Brake, was ineffective for failing to raise his state law claims as issues of federal constitutional law.  Application at 8.  Although the Application does not identify which claims should have been raised as issues of federal constitution law, in his traverse, Applicant states that appellate counsel failed to raise his speedy trial claim as a federal constitutional claim.  Traverse at 12.

Here, the CCA found no error in the trial court's decision that Applicant was not provided ineffective assistance of appellate counsel.  Identifying the correct standard from *Jones v. Barnes*, 463 U.S. 745, 753 (1983), the CCA noted that appellate counsel has "a duty to prioritize 'issues on appeal based upon their strength so as to avoid burying good arguments . . . in a verbal mound made up of strong and weak contentions.  Answer at Exhibit M, p. 19 (citing *People v. Rodriguez*, 914 P.2d 230, 303 (Colo. 1996) (quoting *Jones,* 463 U.S. at 753)).  The CCA also noted that the trial court found that appellate counsel had "used reasonable and proper judgment in selecting and prioritizing the strongest issues to present on appeal." *Id.* at 20.

"[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones*, 463 U.S. at 753); *see also Malicoat v. Mullin*, 426 F.3d 1241, 1248 (10th Cir. 2005).  Indeed, the *Jones* Court noted the "importance of winnowing out weaker

25

arguments on appeal and focusing on one central issue if possible, or at most a few key issues." *Jones*, 463 U.S. at 751-52.  In determining whether counsel's performance was deficient for omitting an issue on appeal, "the court must consider the merits of the omitted issue." *Malicoat*, 426 F.3d at 1249 (citing *Robbins*, 528 U.S. at 288).  Further, relief on such a claim "is warranted only if the petitioner establishes a reasonable probability of a favorable result had his appellate counsel raised the omitted issue." *Id.*

Because, as set forth above, I find that Applicant's speedy trial claim has no merit, I likewise find that appellate counsel was not ineffective for failing to raise this as a federal constitutional claim.  Therefore, I find that the CCA's holding on this issues was reasonable and not contrary to or an unreasonable application of clearly established Supreme Court precedent and Applicant is not entitled to habeas corpus relief on this claim.

## IX.  Conclusion & Orders

On each of Applicant's claims, I conclude that the rulings of the trial court and the Colorado Court of Appeals were not contrary to clearly established federal law, and did not involve an unreasonable application of clearly established federal law.

**THEREFORE IT IS ORDERED** as follows:

1.      that Applicant Michael O. Backus' Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus [#2] is **DENIED**; and

2.      That this case is **DISMISSED**.

Dated:  May 26, 2009

BY THE COURT:

Robert E. Blackburn
United States District Judge